UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- X

TINA GRAY,                                          :
                                                   :
                    Plaintiff,                       :          CASE NO.: _____
                                                   :
          -against-                                 :
                                                   :
IMMUNE DESIGN CORP., CARLOS PAYA,    :
EDWARD PENHOET, DAVID BALTIMORE,    :
FRANKLIN BERGER, LEWIS COLEMAN,       :
SUSAN KELLEY, and WILLIAM RINGO,       :
                                                   :
                    Defendants.                     :
                                                   :
                                                   :
------------------------------------------- X

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

          Plaintiff Tina Gray ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon

personal knowledge:

### NATURE OF THE ACTION

          1.        This is an action brought by Plaintiff against Immune Design Corp. ("Immune" or

the "Company") and the members of the Company's board of directors (collectively referred to as

the "Board" or the "Individual Defendants" and, together with Immune, the "Defendants") for

their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934

("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States

Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-

9"). Plaintiff's claims arise in connection with the proposed tender offer by Merck Sharp & Dohme

Corp. ("Merck") through its wholly owned subsidiary, Cascade Merger Sub Inc. ("Merger Sub"),

to acquire all of the issued and outstanding shares of Immune (the "Tender Offer").

2.      On February 20, 2019, Immune entered into an Agreement and Plan of Merger (the "Merger Agreement") by and among the Company, Merck, and Merger Sub, pursuant to which, among other things, Merger Sub will merge with and into Immune, the separate existence of Merger Sub will cease and Immune will continue as the surviving corporation and as a wholly owned subsidiary of Merck (the "Proposed Transaction").

3.      Under the terms of the Merger Agreement, each shareholder of Immune common stock will be entitled to receive $5.85 in cash (the "Offer Price").

4.      On March 5, 2019, in order to convince Immune's public common shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC.

5.      In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) financial projections for Immune; and (ii) the valuation analyses performed by Immune's financial advisor, Lazard Frères & Co. LLC ("Lazard"), in support of its fairness opinion.

6.      The Tender Offer is scheduled to expire at 11:59 p.m., Eastern Time, on April 1, 2019 (the "Expiration Time").  It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the Expiration Time so they can properly determine whether to tender their shares.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.  Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to

consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Immune's public common shareholders sufficiently in advance of the Expiration Time or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Immune's common stock trades on the Nasdaq, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.    Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Immune common stock.

12.    Defendant Immune is a Delaware corporation with its principal place of business located at 1616 Eastlake Ave. E., Suite 310, Seattle, Washington 98102.  The Company is a clinical-stage immunotherapy company focused on cancer with next-generation *in vivo* approaches designed to enable the body's immune system to fight disease.  Immune's common stock trades on the Nasdaq under the ticker symbol "IMDZ."

13.    Defendant Carlos Paya is, and has been at all relevant times, a director of the Company.  Defendant Paya also serves as the Company's President and Chief Executive Officer ("CEO"), in addition to serving as a member of the Transaction Committee.

14.    Defendant Edward Penhoet is, and has been at all relevant times, a director of the Company.  Defendant Penhoet also currently serves as Chairman of the Board.

15.    Defendant David Baltimore is, and has been at all relevant times, a director of the Company.

16.    Defendant Franklin Berger is, and has been at all relevant times, a director of the Company.  Defendant Berger also served as a member of the Transaction Committee.

17.    Defendant Lewis Coleman is, and has been at all relevant times, a director of the Company.  Defendant Coleman also served as a member of the Transaction Committee.

18.    Defendant Susan Kelley is, and has been at all relevant times, a director of the Company.

19.    Defendant William Ringo is, and has been at all relevant times, a director of the Company.  Defendant Ringo also served as a member of the Transaction Committee.

20. The defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Immune, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

21. Immune is a clinical-stage immunotherapy company focused on cancer with next-generation *in vivo* approaches designed to enable the body's immune system to fight disease. The Company has engineered its technologies to activate the immune system's natural ability to create tumor-specific cytotoxic T cells (CTLs) to fight cancer. Immune's lead product candidate, G100, is being evaluated in multiple arms of a Phase 2 clinical trial. In addition, the Company has licensed to third parties the right to use its GLAAS® platform in select infectious disease and allergy indications.

22. Merck, a leading global biopharmaceutical company known as MSD outside of the United States and Canada, has been inventing for life, bringing forward medicines and vaccines for many of the world's most challenging diseases.

23. On February 20, 2019, the Board caused the Company to enter into the Merger Agreement.

24. Pursuant to the terms of the Merger Agreement, the Company's current shareholders only expect to receive $5.85 in cash for each share of Immune common stock they own.

25. According to the February 21, 2019, Immune and Merck issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

**Merck to Acquire Immune Design**

**Acquisition Bolsters Capabilities in Vaccine Development for
Infectious Diseases and Cancer**

KENILWORTH, N.J., SEATTLE and SOUTH SAN FRANCISCO, Calif., Feb. 21, 2019 – Merck (NYSE: MRK), known as MSD outside the United States and Canada, and Immune Design (NASDAQ: IMDZ), today announced that the companies have entered into a definitive agreement under which Merck, through a subsidiary, will acquire Immune Design for $5.85 per share in cash for an approximate value of $300 million.

"Scientists at Immune Design have established a unique portfolio of approaches to cancer immunization and adjuvant systems designed to enhance the ability of a vaccine to protect against infection, which could meaningfully improve vaccine development," said Dr. Roger M. Perlmutter, president, Merck Research Laboratories. "This acquisition builds upon Merck's industry-leading programs that harness the power of the immune system to prevent and treat disease."

Immune Design is a late-stage immunotherapy company employing next-generation in vivo approaches to enable the body's immune system to fight disease. The company's proprietary technologies, GLAAS® and ZVex®, are engineered to activate the immune system's natural ability to generate and/or expand antigen-specific cytotoxic immune cells to fight cancer and other chronic diseases.

"Merck has a rich history of discovery and innovation and a strong track record of developing meaningful therapeutics and vaccines," said Dr. Carlos Paya, president and chief executive officer, Immune Design. "We believe this agreement creates shareholder value by positioning our technologies and capabilities for long-term success with a leading, research-driven biopharmaceutical company."

Under the terms of the acquisition agreement announced today, Merck, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of Immune Design. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Immune Design's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. Upon the successful completion of the tender offer, Merck will acquire all shares not acquired in the tender through a second-step merger. The transaction is expected to close early in the second quarter of 2019.

Credit Suisse acted as financial advisor to Merck in this transaction and Gibson, Dunn & Crutcher LLP as its legal advisor. Lazard acted as financial advisor to Immune Design and Cooley LLP as its legal advisor.

**The Recommendation Statement Omits Material Information**

26.     On March 5, 2019, Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Recommendation Statement misrepresents or omits material information that is necessary for Immune's public common shareholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.

27.     First, the Recommendation Statement fails to fully disclose Immune's financial projections.

28.     Specifically, the *Background of Offer and Merger* section of the Recommendation Statement discloses that on December 12, 2018, Company management presented to the Board Immune's proposed long-range financial projections.  However, later during that same meeting, the Board determined that it was necessary for Company management to revise the long-range financial projections to depict a more pessimistic view of the Company.

29.     Concerningly, however, the Recommendation Statement fails to disclose this initial iteration of Immune's proposed long-range financial projections, despite the fact that they were prepared less than a week earlier.

30.     Moreover, while the Board stated that its reason for downgrading the projections was due to "new data made available at the recent 2018 American Society of Hematology

Meeting," the American Society of Hematology's Annual Meeting was held on December 1st through 4th, 2018 and, as a result, the initial iteration of Immune's proposed long-range financial projections were prepared after such information was available.

31.    In addition, in the *Certain Financial Projections* section of the Recommendation Statement, two sets of financial projections are disclosed: (i) Case 1: Standalone Probability-Adjusted Product Run-Off Projections (the "Case 1" Projections"); and (ii) Case 2: Probability-Adjusted Going Concern DCF Projections (the "Case 2" Projections").

32.    The Case 1 Projections provide shareholders with projected financial information for the Company for three financial metrics—Total Probability-Adjusted Revenue, Non-GAAP Operating Income, and Free Cash Flow—for the time period of 2019 through 2030, and then years 2032, 2034, 2036, and 2038 thereafter.

33.    However, Lazard's *Probability-Adjusted Product Run-off / Sum-of-the-Parts DCF Analysis* states that "Lazard performed **separate DCF analyses** with respect to the following products and collaborations of the Company: G100 in 4L Follicular Lymphoma ("4L FL"); G100 in 2L Follicular Lymphoma ("2L FL"); G100 in 2L Cutaneous T-Cell Lymphoma ("CTCL"); G100 in 2L Marginal Zone Lymphoma ("MZL"); HSV collaboration with Sanofi; A potential RSV collaboration; and A potential HPV collaboration with Merck & Co."  Recommendation Statement at 29.

34.    While Lazard calculated a derived a range of illustrative values for **each** product, shareholders were not provided with the cash flow projections for **each product and collaboration** that was considered in the analysis.

35.    It is indisputable that the cash flow projections were the most important input in Lazard's *Probability-Adjusted Product Run-off / Sum-of-the-Parts DCF Analysis* for each

product—as Lazard concedes, the entire analysis is based upon discounting the estimated future cash flows to present value. However, Defendants elected to exclude the above-mentioned cash flows for each product and collaboration from the Recommendation Statement, despite the fact that they simultaneously elected to include a purported "summary" of Lazard's *Probability-Adjusted Product Run-off / Sum-of-the-Parts DCF Analysis*.

36.     Numerous courts have championed the importance of management based financial projections because a company's management has unique insight into their firm's future that the market does not. Shareholders cannot hope to replicate management's inside view of a company's prospects. The established case law shows the importance (and, hence, materiality) of financial projections to stockholders' decision-making.

37.     Accordingly, the omission of the cash flow projections for each of products and collaborations that were considered in Lazard's *Probability-Adjusted Product Run-off / Sum-of-the-Parts DCF Analysis* renders the financial projections included in the Recommendation Statement misleading. If a Recommendation Statement discloses financial projections and valuation information, such **projections must be complete and accurate**. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—**but it may not choose half-truths**. Accordingly, Defendants have disclosed some of the projections relied upon by Lazard, but have omitted the above-mentioned projections. Thus, their omission renders the projections disclosed on page 26 misleading.

38.     Second, the Recommendation Statement describes Lazard's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of

Lazard's fairness opinion and analyses fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Immune's shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Lazard's fairness opinion in determining whether to tender their shares in the Tender Offer. This omitted information, if disclosed, would significantly alter the total mix of information available to Immune's common shareholders.

39.    With respect to Lazard's *Probability-Adjusted Product Run-off / Sum-of-the-Parts DCF Analysis*, the Recommendation Statement fails to disclose the following key components used in the analysis: (i) the separate cash flows utilized in the separate discounted cash flow ("DCF") analyses that were conducted for the following products and collaborations of the Company: (1) G100 4L FL; (2) G100 2L FL; (3) G100 CTCL; (4) G100 MZL; (5) HSV collaboration with Sanofi; (6) A potential RSV collaboration; and (7) A potential HPV collaboration with Merck & Co; (ii) the separate results of each of the above-referenced DCF analyses that Lazard conducted; (iii) the inputs and assumptions underlying the calculation of the discount rate range of 12.0% to 15.0%; (iv) the range of illustrative terminal values that were calculated for each of the above-mentioned products and collaborations; and (v) the inputs and assumptions underlying the selection of the negative terminal growth rate ranges of (50%) to (20%). *See* Recommendation Statement at 29-30.

40.    Similarly, with respect to Lazard's *Probability-Adjusted Going Concern DCF Analysis*, the Recommendation Statement fails to disclose the following key components used in the analysis: (i) the inputs and assumptions underlying the calculation of the discount rate range of 12.0% to 15.0%; (ii) the range of illustrative terminal values that were calculated for the Company; (iii) the inputs and assumptions underlying the selection of the terminal growth rate

ranges of 1.0% to 3.0%.  *See* Recommendation Statement at 30.

41.    These key inputs are material to Immune's shareholders, and their omission renders the summaries of Lazard's *Probability-Adjusted Product Run-off / Sum-of-the-Parts DCF Analysis* and *Probability-Adjusted Going Concern DCF Analysis* incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a DCF analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id*.  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars…* This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**.* The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).    Without the above-mentioned information, Immune shareholders cannot evaluate for themselves the reliability of Lazard's *Probability-Adjusted Product Run-off / Sum-of-the-Parts DCF Analysis* and *Probability-Adjusted Going Concern DCF Analysis*, make a meaningful determination of whether the illustrative present value per share reference ranges reflect the true value of the Company or was the result of Lazard's unreasonable

judgment, and make an informed decision regarding whether to tender their shares in the Tender Offer.

42.    With respect to Lazard's *Comparable Companies – Peak Sales Multiples Analysis*, the Recommendation Statement fails to disclose the individual valuation multiples Lazard calculated for each of the companies considered in the analysis.  *See* Recommendation Statement at 30-31.  A fair summary of the *Comparable Companies – Peak Sales Multiples Analysis* requires the disclosure of the individual valuation multiples for each company utilized; merely providing the low, high, mean, and median equity values that a banker calculated is insufficient, as shareholders are unable to assess whether the banker utilized reasonable comparable companies, or, instead, selected unreasonable in order to make the Offer Price appear more favorable. Additionally, the summary of the analysis states that Lazard adjusted for "net debt, preferred stock, and minority interests , as appropriate," but fails to specifically disclose the different adjustments that were considered in the analysis.  The failure to disclose such information further precludes Immune shareholders from evaluating for themselves the reliability of Lazard's *Comparable Companies – Peak Sales Multiples Analysis* and the fairness of the Offer Price, and make an informed decision regarding whether to tender their shares in the Tender Offer.

43.    Similarly, with respect to Lazard's *Premiums Paid Analysis*, the Recommendation Statement fails to disclose the identities of the specific 16 public development-stage biotech companies in transactions announced since 2014 that were considered in the analysis, and their respective premiums.  *See* Recommendation Statement at 33.  For the same reasons mentioned above, the failure to disclose the identities of the 16 transactions and their individual premiums renders the summary of the analysis materially incomplete and misleading.

44.    Defendants' failure to provide the foregoing material information renders the statements in the Recommendation Statement false and/or materially misleading.

45.    In sum, the omission of the above-referenced information renders the Recommendation Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Expiration Time, Plaintiff will be unable to make an informed decision concerning whether to tender his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violation of Section 14(e) of the Exchange Act)

46.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

48.    Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer.  Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

49.    The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the consideration offered to shareholders via the Tender Offer and the intrinsic value of the Company.

50.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).  The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

51.    The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares or seek appraisal.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to shareholders.

52.    Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete

and therefore misleading.

53.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Time.

**COUNT II**

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act**

**and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

56.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.   Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

57.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

58.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

59.     The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9(d) if other SEC regulations specifically require disclosure of the omitted information.

60.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.  Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

61.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT III

### (Against all Defendants for Violations of Section 20(a) of the Exchange Act)

62.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.    The Individual Defendants acted as controlling persons of Immune within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Immune, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

64.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Tender Offer. They were thus directly involved in preparing the Recommendation Statement.

66.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

17

67.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e) and 14(d)(4) and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

69.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B.    Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 18, 2019

**MONTEVERDE & ASSOCIATES PC**

By: _/s/ Juan E. Monteverde_
Juan E. Monteverde (JM-8169)
The Empire State Building 350 Fifth
Avenue, Suite 4405 New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*